Citation Nr: 1641926 
Decision Date: 10/31/16 Archive Date: 11/08/16

DOCKET NO. 12-21 298 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Columbia, South Carolina


THE ISSUES

1. Entitlement to an initial rating in excess of 30 percent prior to May 26, 2015 and 50 percent thereafter for posttraumatic stress disorder (PTSD).

2. Entitlement to a total disability rating based on individual unemployability (TDIU) as a result of service-connected disabilities.


REPRESENTATION

Appellant represented by: The American Legion


WITNESS AT HEARING ON APPEAL

Appellant



ATTORNEY FOR THE BOARD

C. Jones, Associate Counsel


INTRODUCTION

The Veteran had active military service from March 1969 to February 1971. 

These matters come before the Board of Veterans' Appeals (Board) on appeal of an August 2010 rating decision by the Department of Veterans Affairs (VA) Regional Office (RO) in Columbia, South Carolina, which, in pertinent part, granted service connection for PTSD and assigned a 30 percent disability rating, effective June 4, 2009. 

The Veteran testified before the undersigned at a Board videoconference hearing in July 2014. A transcript of the hearing has been reviewed and associated with the claims file.

In a December 2014 decision, the Board remanded the issue of entitlement to an increased rating for PTSD for further evidentiary development.

Thereafter, in a June 2015 rating decision, the Appeals Management Center (AMC) increased the rating for PTSD to 50 percent disabling, effective May 26, 2015.

The issue of entitlement to a TDIU is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).


FINDING OF FACT

Throughout the rating period on appeal, the Veteran's PTSD has been manifested by occupational and social impairment with reduced reliability and productivity.


CONCLUSION OF LAW

Throughout the rating period on appeal, the criteria for a 50 percent rating, but no higher, for PTSD have been met. 38 U.S.C.A. §§ 1155, 5103, 5103A, 5107 (West 2014); 38 C.F.R. §§ 3.159, 4.1, 4.7, 4.10, 4.130, Diagnostic Code 9411 (2015).


REASONS AND BASES FOR FINDING AND CONCLUSION

Veterans Claims Assistance Act of 2000 (VCAA)

As provided for by the VCAA, VA has a duty to notify and assist veterans in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.159 and 3.326(a) (2015). 

The claim adjudicated herein stems from the initial grant of service connection. The courts have held that once service connection is granted the claim is substantiated, additional notice is not required, and any defect in the notice is not prejudicial. Hartman v. Nicholson, 483 F.3d 1311 (Fed. Cir. 2007); Dunlap v. Nicholson, 21 Vet. App. 112 (2007). 

Next, VA has a duty to assist the Veteran in the development of the claim. This duty includes assisting him in the procurement of service treatment records and pertinent treatment records and providing an examination when necessary. 
38 U.S.C.A. § 5103A; 38 C.F.R. § 3.159.

Service treatment records are associated with claims file. All identified post-service treatment records have been obtained. As requested in the Board's December 2014 remand directives, outstanding VA treatment records have been retrieved. The Veteran has not sufficiently identified any additional records that should be obtained prior to a Board decision. Therefore, VA's duty to further assist the Veteran in locating additional records has been satisfied. 

The Veteran was afforded VA examinations in August 2010, February 2011, and July 2011. As requested in the Board's remand directives, an additional VA examination was provided in May 2015. The examinations are adequate for the purposes of the matter adjudicated herein, as they were based on consideration of the Veteran's pertinent medical history and described the current severity of the Veteran's disability. See Barr v. Nicholson, 21 Vet. App. 303, 311 (2007).

Thereafter, a supplemental statement of the case was issued in June 2015. Accordingly, the Board finds that there has been substantial compliance with the prior remand instructions and no further action is necessary. See D'Aries v. Peake, 22 Vet. App. 97 (2008) (holding that only substantial, and not strict, compliance with the terms of a Board remand is required pursuant to Stegall v. West, 11 Vet. App. 268 (1998)).

Overall, there is no evidence of any VA error in notifying or assisting the Veteran that reasonably affects the fairness of this adjudication.

Legal Criteria

Disability evaluations are determined by comparing a Veteran's present symptomatology with criteria set forth in VA's Schedule for Rating Disabilities (Rating Schedule), which is based on average impairment in earning capacity. 38 U.S.C.A. § 1155; 38 C.F.R. Part 4. 

In the case of an initial increased rating claim, the entire evidentiary record from the time of a veteran's claim for service connection to the present is of importance in determining the proper evaluation of disability. Fenderson v. West, 12 Vet. App. 119 (1999). Further, the Board must evaluate the medical evidence of record since the filing of the claim for increased rating and consider the appropriateness of a "staged rating" (i.e., assignment of different rating for distinct periods of time, based on the facts). See Hart v. Mansfield, 21 Vet. App. 505 (2007).

When all the evidence is assembled, VA is responsible for determining whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either event, or whether a preponderance of the evidence is against a claim, in which case, the claim is denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

Rating Criteria

The Veteran's service-connected PTSD has been rated under Diagnostic Code 9411.

Under the General Rating Formula, a 30 percent evaluation will be assigned when there is evidence of occupational and social impairment with occasional decrease in work efficiency and intermittent periods of inability to perform occupational tasks (although generally functioning satisfactorily, with routine behavior, self-care, and normal conversation), due to such symptoms as: depressed mood, anxiety, suspiciousness, panic attacks (weekly or less often), chronic sleep impairment, and mild memory loss (such as forgetting names, directions, and recent events). 38 C.F.R. § 4.130, Diagnostic Code 9411.

A 50 percent rating is assigned when the evidence shows occupational and social impairment with reduced reliability and productivity due to such symptoms as: flattened affect; circumstantial, circumlocutory, or stereotyped speech; panic attacks more than once a week; difficulty in understanding complex commands; impairment of short- and long-term memory (e.g., retention of only highly learned material, forgetting to complete tasks); impaired judgment; impaired abstract thinking; disturbances of motivation and mood; and difficulty in establishing and maintaining effective work and social relationships. Id.

A 70 percent disability rating applies when occupational and social impairment reflects deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood, due to such symptoms as: suicidal ideation; obsessional rituals which interfere with routine activities; speech intermittently illogical, obscure, or irrelevant; near continuous panic or depression affecting the ability to function independently, appropriately, and effectively; impaired impulse control; spatial disorientation; neglect of personal appearance and hygiene; difficulty in adapting to stressful circumstances; or an inability to establish and maintain effective relationships. Id.

A 100 percent disability rating is assigned when there is total occupational and social impairment, due to such symptoms as gross impairment in thought processes or communication; persistent delusions or hallucinations; grossly inappropriate behavior; persistent danger of hurting self or others; intermittent inability to perform activities of daily living (including maintenance of minimal personal hygiene); disorientation to time or place; and memory loss for names of close relatives, own occupation, or own name. Id.

The nomenclature employed in the rating schedule is based upon the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, of the American Psychiatric Association (also known as "the DSM-IV"). 38 C.F.R. § 4.130 (2015). The DSM-IV contains a Global Assessment of Functioning (GAF) scale, with scores ranging between zero and 100 percent, representing the psychological, social, and occupational functioning of an individual on a hypothetical continuum of mental health-illness. See Carpenter v. Brown, 8 Vet. App. 240, 242 (1995). 

The DSM-IV contemplates that the GAF scale will be used to gauge a person's level of functioning at the time of the evaluation (i.e., the current period) because ratings of current functioning will generally reflect the need for treatment or care. While GAF scores are probative of the Veteran's level of impairment, they are not to be viewed outside the context of the entire record. Therefore, they will not be relied upon as the sole basis for an increased disability evaluation.

The Board notes VA implemented DSM-V, effective August 4, 2014. The Secretary, VA, has determined, however, that DSM-V does not apply to claims certified to the Board prior to August 4, 2014. See 79 Fed. Reg. 45,093, 45,094 (Aug. 4, 2014). Since the Veteran's appeal was certified to the Board prior to August 4, 2014, DSM-IV is still the governing directive for his appeal.

Evaluation under § 4.130 is symptom-driven, meaning that symptomatology should be the fact-finder's primary focus when deciding entitlement to a given disability rating under that regulation. Vazquez-Claudio v. Shinseki, 713 F.3d 112, 116-17 (Fed. Cir. 2013). In Vazquez-Claudio, the United States Court of Appeals for the Federal Circuit explained that the frequency, severity and duration of the symptoms also play an important role in determining the rating. Id. at 117. Significantly, however, the list of symptoms under the rating criteria are meant to be examples of symptoms that would warrant the rating, but are not meant to be exhaustive, and the Board need not find all or even some of the symptoms to award a specific rating. See 38 C.F.R. § 4.21; Mauerhan v. Principi, 16 Vet. App. 436, 442-43 (2002). If the evidence shows that the Veteran suffers symptoms listed in the rating criteria or symptoms of similar severity, frequency, and duration, that cause occupational or social impairment equivalent to what would be caused by the symptoms listed in the criteria for a particular rating, the appropriate equivalent rating will be assigned. Id. at 443; see also Vazquez-Claudio, 713 F.3d at 117.

Factual Background

Prior to May 26, 2015, the Veteran's PTSD was assigned a 30 percent disability rating. Thereafter, a 50 percent rating is assigned.

Turning to the evidence of record, VA treatment records dated from May 2009 to July 2010 demonstrate mental health treatment. Symptoms included hypervigilance, intrusive thoughts, a sense of detachment, and anxiety. On mental status evaluation, the appellant was alert and oriented times four. He denied suicidal and homicidal ideation and there was no psychosis elicited. GAF scores ranged from 45 to 65. 

The Veteran was provided a VA examination in August 2010. At that time, he reported difficulty sleeping, nightmares, hypervigilance with an exaggerated startle response to loud noises, avoidance, anger, irritability, and difficulty in crowds. He also mentioned that he had intrusive thoughts and flashbacks but could not specify how frequently they occurred. He was verbally violent, but did not demonstrate physical violence. He reported that he had not been able to sleep in the same room with his wife due to his PTSD symptoms. He denied problematic use of alcohol or illicit drugs. He mentioned difficulty with depressed mood for 1 to 2 years due to his back condition. He had anxiety and worry about his finances. He denied having panic attacks, but had decreased energy and an increased appetite. He also stated that he had problems with his memory.

Interpersonally, the Veteran had been married for 39 years and had 3 children. He stated that he had no close friends outside his family because they were all dead. He had no hobbies or activities of interest. However, he used to enjoy going to car and motorcycle shows but lost interest and had not been in 6 or 7 years. He reported that he was a member of a church but had not been in 1 or 2 years. He was adequately able to complete his hygiene, take care of his finances, drive, and ambulate independently. His wife currently did the cooking and cleaning, but he would be able to do so if needed. 

Occupationally, the Veteran was employed and worked 1 to 2 days a week part-time as a barber. He had been employed there for 29 years. He reported being somewhat slow on the job due to his medication and being tired when he got up in the morning. He stated that he had difficulty communicating effectively with his customers and, as a result, had some loss in business. 

On mental status examination, the appellant was alert and oriented to person, place, day, date, and time. Thought process was linear, history was adequate, affect was mildly blunted, and insight was fair. Speech was fluent, grammatic, and free of paraphrasias. Attention and memory were generally within normal limits. When asked about auditory or visual hallucinations, the Veteran reported hearing noises at times. However, he did not report any other symptoms of psychosis. He denied currently experiencing any auditory or visual hallucinations. The appellant also denied a history of suicide attempts or current suicide or homicide ideations. 

The examiner assigned a GAF score of 60. He opined that the Veteran had mild impairment of social and occupational functioning due to his PTSD symptoms.

Subsequent VA treatment records reveal continued treatment for PTSD symptoms. In a November 2010 record, it was noted that the appellant was very symptomatic with PTSD and depression. He had passive suicidal ideations without intent or plan. Additional symptoms included weekly nightmares, intrusive thoughts, hypervigilance, irritability, insomnia, energy problems, feelings of worthlessness, hearing noises, and seeing shadows. On mental status examination, the appellant was friendly, his thought process was circumstantial, and his thought content revealed passive suicidal ideation with not intent or place, and no homicidal ideation or psychosis. The Veteran's cognitive skills were grossly intact. In an addendum note, the physician opined that the appellant's PTSD and depression warranted a 70 percent rating. He noted that the Veteran had missed work due to stress and depression. He also had problems of concentration at work as a barber and had been losing customers. He had difficulty adapting to stressful situations due to hypervigilance and concentration problems, he had near continuous depression, and had difficulty with interpersonal relationships, including with his own family. He also had difficulties in motivation and mood. He opined that these symptoms had affected the appellant's ability to work, to fully experience social relationships, and to experience personal pleasure. 

In a February 2011 VA mental health note, it was reported that the Veteran continued to endorse significant PTSD symptoms including nightmares with arousal symptoms. The physician documented that the appellant and his wife slept in different rooms because of the appellant's nightmares. He continued to be hypervigilant with exaggerated startle response. He had a doorbell installed in his barbershop to avoid unexpected visitors. The physician also noted social isolation, avoidance, detachment, depression, lack of motivation or energy, feelings of hopelessness, and chronic passive death wishes. He had not attempted suicide. On mental status examination, the Veteran was pleasant, looked his stated age, had appropriate hygiene and grooming, and had good eye contact. His speech was normal in tone and rate. Affect was intense and dysphoric but smiling. Mood was stressed and sad, thought content was positive for rumination of chronic passive death wishes but no current suicide or homicide ideations or plan. His thought process was liner and there were no hallucinations or delusions. Insight and judgment were fair and he was oriented to time, place, and person. The physician diagnosed PTSD and depression inadequately controlled on current medication. He determined that the Veteran's psychiatric disability was moderate and assigned a GAF score of 56.

The Veteran was provided a VA examination in February 2011. At that time, he reported that he did not associate with people much and got angry. Additionally, he did not sleep well at night and got up at night to "secure the perimeter." As a result, he no longer slept with his wife. He also got fatigued and had nightmares. He checked the door frequently when home and reported symptoms of depression with anger and anhedonia. He denied flashbacks or intrusive thoughts. With regard to his social ability, the appellant mentioned that he stopped interacting with other people and that he no longer attended church. 

Occupationally, the appellant had worked as a barber for 30 years and owned his own business. However, because of his back and depression, he only worked 1 to 2 times per week. The examiner opined that the appellant was capable of performing activities of daily living and did them routinely and independently. 

Socially, the appellant had been married for 40 years and lived with his wife and daughter. He described their relationship as good. 

On mental status examination, the Veteran was alert and oriented to personal information and place; temporal orientation was found to be normal. He provided an accurate history. Insight was adequate, affect was mildly blunt, and response latencies were normal. The appellant demonstrated adequate attention and was not distractible. His response speech was fluent, grammatic, and free of paraphasias. Immediate, recent, and remote memories were all within normal limits. There was no evidence of a disorder of thought process or content. He made poor eye contact. It was documented that the appellant wore clip-in sunglasses over his prescription glasses, but could not explain why. His grooming and hygiene were normal. There was no grandiosity, irritability, or restlessness noted. The Veteran was found to be logical and goal directed. He reported moderate dysphoria and significant anhedonia and feelings of helplessness and hopelessness. He denied suicidal or homicidal ideation or plan. 

The examiner assigned GAF scores of 50 and 60. He opined that the GAF score associated with PTSD was 60. The remainder of the impairment was related to his mood disorder secondary to his lumbar spine disability. He opined that the Veteran's PTSD resulted in mild impairment in social and occupational functioning. 

In an addendum examination report dated in March 2011, the examiner who provided the February 2011 VA examination reported that at the time of the examination, the Veteran's claims file was no available. However, based on a review of the, there was no changed in his diagnostic impression or discussion.

The Veteran underwent an additional VA examination in July 2011. Occupationally, the appellant reported that he had owned his own barbershop for approximately 25 years and worked 1 to 2 days per week. He decreased his hours in October 2010 because he was having trouble dealing with the children who were coming into the barbershop with their parents and the noise level. He reported feeling irritable, having problems with concentration on the job, and trouble focusing. He stated that he was not sure how many days of work he missed the year prior to the exam due to his PTSD symptoms.

With regard to relationships, the appellant had been married for 20 years and had 1 daughter, 2 sons, and 7 grandchildren. He had a good relationship with his wife, but they slept separately because of his nightmares. The relationship with his children and grandchildren was fair. He mentioned that sometimes he could be irritable and withdrawn but he tried to manage it with his wife. He denied close friends, but said that he had 2 casual friends whom he saw once per month. He spent much of his time alone and occasionally watched television and read. The appellant reported that he and his wife went out to eat once every couple of months. 

On mental status evaluation, the Veteran was alert, oriented, and attentive and appeared his stated age. His mood was dysphoric, affect was constricted, and his speech was slow. There was no evidence of psychomotor agitation or retardation. The Veteran's eye contact was fair and he was cooperative and pleasant with the examiner. His thought process was logical and coherent and his thought content was devoid of current auditory or visual hallucinations. There was no evidence of delusional content. He denied current thoughts of hurting himself or others. The Veteran denied a history of suicide attempts and said that the last time he was aggressive with someone was about 1 to 2 years ago. His memory was mildly impaired for immediate information. It was fairly intact for recent and remote events. He was not able to concentrate well enough to spell words backwards and was not able to interpret a proverb. The examiner determined that the Veteran had average intelligence and had partial insight into his current condition. A GAF score of 52 was assigned. 

The examiner opined that the Veteran exhibited considerable symptoms with his PTSD. Specifically, he reported intrusive thoughts of combat 2 to 3 times per week, nightmares 2 to 3 time a week, flashbacks on 2 occasions, and psychological and physiological reactivity to loud noises. He further mentioned that he tried to avoid talking or thinking about his trauma. He also avoided crowds, news about the war, and war movies. His affect was constricted and he described emotional detachment from others, and less interest in activities. He said that he slept about 6 hours, was irritable, and had trouble with concentration at times. He described an exaggerated startle reaction to loud noises and unexpected approaches and having a hypervigilant style. He denied depressive symptoms, periods of remission, and problems with activities of daily living such as feeding, bathing, or toileting himself. In terms of social adaptability and interactions with others, the examiner opined that the appellant appeared to be moderately to considerably impaired. In terms of his ability to maintain employment and perform job duties in a reliable, flexible, and efficient manner, the appellant was considerably impaired. The examiner determined that overall; he would estimate the Veteran's level of disability to be in the moderate to considerable, to at times considerable range. However, the Veteran appeared capable of handling his own funds. 

Subsequent VA treatment records dated from August 2011 to May 2013 demonstrate continued treatment for the Veteran's PTSD, to include group therapy. GAF scores ranged from of 55 to 62. Symptoms included nightmares, hypervigilance, avoidance, depression, occasional hopelessness, and passive death wishes but no suicidal or homicidal ideations. It was noted that the appellant possessed 10 guns, but there was no concern for his safety. On mental status examination, the appellant was cooperative and friendly, mildly anxious, and had good eye contact. There were no abnormal movements. His speech was soft spoken and clear, affect was calm, mildly anxious, and tense, and his mood was anxious but improved. His thought content was positive for some rumination but not suicidal or homicidal ideation. Thought process was linear and organized. There were no hallucinations. Insight and judgment were good and the appellant was alert and oriented to time, place, and person. 

A statement from the Veteran's pastor received in May 2013 noted that the Veteran was a very pleasant, humble, and kindhearted man to be around. He regularly attended church and gave free haircuts to help with the annual church fundraiser. However, before he retired, it was noticed that the Veteran had not been attending church regularly and had stopped participating in church events. The last time he saw the appellant, he seemed distant and worried. He usually carried good conversations, but was now very short with answers and seemed like he was anxious. He also did not give any eye contact. 

In a statement from the Veteran's wife, also received in May 2013, she noted that the Veteran was a very enthusiastic, outgoing, hardworking, and joyful person; however, over the past couple of years, PTSD had changed his personality. He was very irritable, anxious, and agitated. He often had extreme mood swings, which caused him to be depressed and isolated. The appellant did not get much sleep and when he did fall asleep, he was often awakened by nightmares. He had become withdrawn from others and did not want to go outside or to family events. 

In a statement from the Veteran's daughter-in-law received in June 2013, she reported that the last 2 years had been very difficult for the Veteran. She mentioned that prior to that time, he would visit his grandchildren 3 to 4 times per week, but since he had been sick, he only saw them once a week. She noticed that is memory was not good and that he was forgetful at times. 

VA treatment records from May 2013 to April 2015 reveal treatment for PTSD symptoms with GAF scores ranging from 55 to 62. Notably, in a November 2013 record, the appellant reported that he did not go anywhere and had not been to church since July 2013. He stated that he avoided people and that his mood was up and down. 

In testimony provided during the July 2014 Board hearing, the appellant reported symptoms to include nightmares, hypervigilance, anger, and irritability. He also stated that he used to go to church every Sunday, but no longer attended as frequently due to crowds. When he did attend church, he sat at the back near the door. He mentioned that he avoided all situations that involved crowds. Although he reported that he retried due to his age, he noted that he was not making the amount of money he used to make due to his PTSD. However, he still owned the barbershop and people rented the space for him. He said that most of his friends are in his PTSD group and that he did not attend family gatherings.

The Veteran underwent a VA examination in May 2015. At that time, he reported that he had been married for 44 years and had 3 adult children. He lived at home with his wife and his granddaughter whom he adopted. 

Occupationally, it was noted that the Veteran was not employed. He was last employed as a barber for 30 years and stopped working at the age of 62. 
The examiner determined that the appellant's PTSD symptoms caused occupational and social impairment with reduced reliability and productivity. 

Symptoms of the Veteran's PTSD included suspiciousness, panic attacks more than once a week, chronic sleep impairment, mild memory loss such as forgetting names, directions, or recent events, disturbances of motivation and mood, difficulty establishing and maintaining effective work and social relationships, and difficulty in adapting to stressful circumstances, including work or a work like setting. 

On behavioral observation, the examiner noted that the Veteran was generally alert and oriented to person, place, time, day, and month. He was not oriented to the date. He was cooperative with the examination. His mood was mildly anxious, his affect was mildly constricted, and his memory was mildly impaired. His speech was fluent. 



Analysis

After a review of the evidence, the Board finds that the criteria for an evaluation of 50 percent have been approximated for the entire period on appeal. In this regard, the Veteran's PTSD has been manifested by difficulty sleeping, nightmares, feelings of hopelessness, anxiety, irritability, lack of motivation, hypervigliance, difficulty concentrating, impairment of memory, and social isolation, with overall GAF scores indicative of moderate symptomatology. Moreover, the evidence demonstrates that the appellant's PTSD symptoms interfered with his employment prior to his retirement. In this regard, the evidence demonstrates that he had lost customers as due to his poor concentration and had difficulty adapting to stressful situations. The Board finds that these symptoms are consistent with a disability picture contemplated by occupational and social impairment with reduced reliability and productivity. 38 C.F.R. § 4.130, Diagnostic Code 9411. Under such circumstances, and resolving all doubt in favor of the Veteran, the Board concludes that an evaluation of 50 percent is warranted for PTSD throughout the appeal period. 38 C.F.R. § 4.7. 

However, the Board finds that a rating in excess of 50 percent is not warranted. In finding against the next-higher 70 percent rating, the Board finds that the evidence does not more nearly approximate a disability picture manifested by occupational and social impairment with deficiencies in most areas. While not dispositive, the Board notes that the evidence fails to show that the Veteran suffered from obsessional rituals, speech intermittently illogical, obscure, or irrelevant, impaired impulse control, or neglect of personal appearance and hygiene. Additionally, the evidence of record does not demonstrate spatial disorientation. Instead, the examination reports and medical records reflect that the Veteran was found to be oriented to time, person and place. Although the Veteran reported passive death wishes, he denied suicidal or homicidal ideations or intent to hurt himself or others. The suicidal ideation did not appear to be frequent or to otherwise additionally to his social and occupational impairment. The Board observes that in the November 2010 VA treatment record, the physician noted that the appellant had near continuous depression, However, there was no indication that it affected the Veteran's ability to function independently, appropriately, and effectively. 

The Board acknowledges that the Veteran reported that his PTSD symptoms interfered with his employment. While it was determined that the appellant's PTSD symptoms included difficulty in adapting to stressful circumstances, the VA examiners determined that the Veteran's PTSD symptoms resulted in mild to moderate occupational impairment. Notably, the May 2015 VA examiner determined that the appellant's PTSD symptoms caused occupation and social impairment with reduced reliability and productivity, suggestive of the 50 percent rating assigned herein. 

Socially, the appellant has been married for 41 years and described having a good relationship with his wife, even though they cannot sleep together due to his symptomatology. He has 3 adult children and 7 grandchildren and reported fair relationships with them. Additionally, he adopted his granddaughter who lived with him and his wife. Although the appellant reported that he had no close friends, he stated that he had 2 casual friends and in testimony during the Board hearing, he indicated that he had friends in his PTSD group. Thus, while the appellant's documented and reported symptomatology is significant, such have been contemplated by the 50 percent evaluation. At this time, the disability picture does not more closely approximate the next-higher 70 percent evaluation, as explained above.

The Board has also considered the GAF scores assigned during the appeal period. GAF scores ranged from 45 to 62, indicative of mild to serious symptoms. The Board notes that, while important, the GAF scores assigned in a case are not dispositive of the evaluation and must be considered in light of the actual symptoms of the Veteran's disorder. See 38 C.F.R. § 4.126(a). The Board has considered the actual symptoms and resulting impairment as set forth above, and concludes that the impairment caused by these signs and symptoms more nearly approximates a 50 percent rating. 

The Board has considered the lay statements of record regarding the Veteran's PTSD symptoms and finds them competent and credible. Consideration has also been given to the November VA physician's opinion that a 70 percent rating is warranted. However, when viewed against the totality of the evidence, the Board finds that the Veteran's social and occupational impairment most closely approximates the current 50 percent rating. 

In sum, the Board determines that throughout the rating period on appeal a 50 percent evaluation is warranted; the preponderance of the evidence is against the assignment of a rating in excess of 50 percent for the Veteran's PTSD. 38 C.F.R. § 4.7.

Extra-schedular Consideration
 
The Board has also considered whether this case should be referred for extra-schedular consideration pursuant to 38 C.F.R. § 3.321(b)(1). However, this case does not present such an exceptional or unusual disability picture that it would be impracticable to apply the schedular standards, and referral is unnecessary. See Thun v. Peake, 22 Vet. App. 111, 115-16 (2008). Rather, the manifestations of the Veteran's PTSD are fully considered by the rating criteria. This includes the social and occupational impairment that results from the appellant's psychiatric symptoms. Thus, referral for consideration of an extra-schedular disability rating is not necessary at this time. See Thun, 22 Vet. App. at 115-16.

The Board notes that under Johnson v. McDonald, 762 F.3d 1362 (2014), a Veteran may be awarded an extra-schedular rating based upon the combined effect of multiple conditions in an exceptional circumstance where the evaluation of the individual conditions fails to capture all the service-connected disabilities experienced. The Board is required to address whether referral for extraschedular consideration is warranted for a veteran's disabilities on a collective basis only when that issue is argued by the claimant or reasonably raised by the record through evidence of the collective impact of the claimant's service-connected disabilities. Yancy v. McDonald, 27 Vet. App. 484, 495 (2016). This consideration is not warranted here because the Veteran's only service-connected disability is prolonged adjustment disorder; thus, there are no combined effects.



ORDER

Entitlement to an initial disability rating of 50 percent rating, but no higher, for PTSD, is granted, subject to statutory and regulatory provisions governing the payment of monetary benefits.


REMAND

Entitlement to a TDIU can be part and parcel of an increased rating claim. Rice v. Shinseki, 22 Vet. App. 447, 453 (2009). Entitlement to a TDIU is raised where a veteran: (1) submits evidence of a medical disability; (2) makes a claim for the highest rating possible; and (3) submits evidence of unemployability. Roberson v. Principi, 251 F.3d 1378 (Fed. Cir. 2001). Here, the evidence indicates that the Veteran is unemployed and asserts that his unemployment is due, in part, to his service-connected psychiatric disability.

A review of the record shows that that Veteran has not been provided the specific notice required in response to a claim for a TDIU, and the originating agency has not adjudicated the TDIU issue. Therefore, the Board finds that further action is required of the originating agency before the Board decides the TDIU issue.

The Board acknowledges that the Veteran's is service connected for PTSD (50 percent disabling) and erectile dysfunction (noncompensable). His combined disability rating is 50 percent. Therefore, he does not meet the threshold requirements for a TDIU. 38 C.F.R. § 4.16(a). Nevertheless, VA's policy is to rate totally disabled all veterans who are unemployable. In such cases, the rating boards should submit the case to the Director, Compensation Service for extra-schedular consideration. 38 C.F.R. § 4.16(b). Therefore, the Board finds that this matter must be referred to the Director, Compensation Service.



Accordingly, the case is REMANDED for the following action:

1. Provide all required notice in response to the TDIU claim, to include providing and requesting the Veteran to complete and return the appropriate form for entitlement to a TDIU.

2. Based on the response or record, undertake any other development determined to be warranted.

3. Thereafter, refer the claim for a TDIU to the Director, Compensation Service for a determination under § 4.16(b) and notify the Veteran of such action.

4. Adjudicate the claim of entitlement to a TDIU. If the benefit sought on appeal is not granted to the Veteran's satisfaction, a statement of the case should be furnished to the Veteran and his representative and they should be afforded the requisite opportunity to respond. Thereafter, if indicated, the case should be returned to the Board for further appellate action.

The appellant has the right to submit additional evidence and argument on the matter or matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).


 (CONTINUED ON NEXT PAGE)






This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).




______________________________________________
ERIC S. LEBOFF
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs